UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CANDICE LUE,

                Plaintiff,

            -v.-

JPMORGAN CHASE & CO.; ALEX KHAVIN;
FIDELIA SHILLINGFORD; KIMBERLY DAUBER;
BARUCH HOROWITZ; CHRIS LIASIS; and
MICHELLE SULLIVAN,

                Defendants.

19 Civ. 9784 (KPF)

**OPINION AND ORDER**

---

KATHERINE POLK FAILLA, District Judge:

Plaintiff Candice Lue, proceeding *pro se*, brings this suit against JP Morgan Chase & Co. ("Chase"), as well as Chase employees Alex Khavin, Fidelia Shillingford, Kimberly Dauber, Baruch Horowitz, Chris Liasis, and Michelle Sullivan (together with Chase, "Defendants"), alleging multiple claims of defamation. Defendants now move to dismiss Plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the Court grants Defendants' motion in full.

**BACKGROUND**[1]

## A.   Factual Background

This lawsuit is not the first between these parties. On April 29, 2016, Plaintiff, proceeding *pro se*, sued Defendant Chase and several of its employees,

---

[1]   The facts in this Opinion are drawn from Plaintiff's Amended Complaint ("Am. Compl." (Dkt. #4)), the well-pleaded allegations of which are taken as true for purposes of this motion. The transcript of the February 18, 2020 conference is referred to as "Hr'g Tr." (Dkt. #26).

    For convenience, the Court refers to Plaintiff's Letter Brief in Opposition to the Motion to Dismiss, submitted in advance of the February 18, 2020 conference, as "Pl. Br." (Dkt.

including Khavin, Shillingford, Liasis, and Sullivan, who are also named as defendants in this suit. *See Lue* v. *JPMorgan Chase & Co.*, No. 16 Civ. 3207 (AJN), 2018 WL 1583295 (S.D.N.Y. Mar. 27, 2018) ("*Lue I*"). In *Lue I*, Plaintiff alleged various forms of racially-motivated discrimination, harassment, and retaliation and stemming from her employment at Chase. *Id.* at *1-4. Plaintiff now alleges that Defendants here made defamatory statements about her in *Lue I*. (*See generally* Am. Compl.). As such, the Court relates those facts from *Lue I* that are relevant to resolving the instant motion to dismiss.

Plaintiff is a Black woman who was formerly employed by Chase as an analyst. (Am. Compl. ¶ 13). In *Lue I*, Plaintiff pleaded ten causes of action, but "the crux of Plaintiff's complaint stem[med] from her supervisor's assignment to her of various tasks she found demeaning or humiliating, and which she believed reflected her status as the 'only Black Analyst' in the Counterparty Risk Group, the team within Chase on which she served." *Lue I*, 2018 WL 1583295, at *2 (citation omitted). Starting in May 2015, Plaintiff raised complaints regarding this purportedly discriminatory treatment to Shillingford, her supervisor, and to Chase's Human Resources Department. *Id.* at *3. After an investigation into Plaintiff's concerns, Chase "concluded that Plaintiff's allegations were unfounded[.]" *Id.* On July 30, 2015, Shillingford and a representative from Human Resources conducted Plaintiff's mid-year

---

#22); Defendants' Memorandum of Law in Support of Their Motion to Dismiss as "Def. Br." (Dkt. #29); Plaintiff's Memorandum of Law in Opposition to the Motion as "Pl. Opp." (Dkt. #30); and Defendants' Reply Memorandum of Law in Support of Their Motion as "Def. Reply" (Dkt. #32).

performance review, put Plaintiff on a performance improvement plan, and "informed [Plaintiff] that she was expected to perform all tasks assigned to her and to improve her communication style." *Id.* at *4. Plaintiff refused to sign the performance improvement plan, and over the next three months, additionally refused to perform a number of work-related tasks. *Id.* She was ultimately terminated from Chase on January 6, 2016. *Id.*

By Opinion and Order entered March 27, 2018, Judge Nathan granted summary judgment in favor of the *Lue I* defendants on all counts and dismissed Plaintiff's claims. *See Lue I*, 2018 WL 1583295, at *11. On April 24, 2019, the Second Circuit affirmed Judge Nathan's decision, *see Lue* v. *JPMorgan Chase & Co.*, 768 F. App'x 7 (2d Cir. 2019) (summary order), and on October 15, 2019, the Supreme Court denied *certiorari*, *see* 140 S. Ct. 388 (2019).

Plaintiff's claims in the instant litigation arise out of purportedly defamatory statements made during the course the *Lue I* litigation, particularly its appeal. Although Plaintiff's theory of liability is not exactly clear, the Court understands Plaintiff to be contending that Defendants made false statements in their submissions to the Second Circuit in the course of Plaintiff's appeal in *Lue I*. (*See* Am. Compl. ¶¶ 22-29). Plaintiff proffers that these "false, misleading, libelous, perjurious[,] and disparaging statements" "defamed [her] character" and "maliciously and mendaciously made [her] out to be a vindictive, lying, troublesome, uncongenial and elitist person[,] and a less desirable/undesirable employee." (*Id.* at ¶ 17). Plaintiff's Amended Complaint

3

lists a slew of specific factual allegations contained in Defendant's submissions to the Second Circuit that, in Plaintiff's estimation, are actionable as defamation, including that:

> i. Chase stated that Plaintiff "reported to Michelle Sullivan while [Plaintiff] was in the Commodities Operations Department," which "false and misleading statement" "ma[de Plaintiff] out to be a liar";
>
> ii. Chase cited to "defamatory snippets of comments" from Plaintiff's 2013 mid-year performance review, which snippets were taken out of context and "intentionally and strategically placed ... to defame [her] character";
>
> iii. Chase made "malicious, false, misleading, barefaced[,] and defamatory lies," by stating that "a White man with a higher job title than Plaintiff" has been assigned and performed the same tasks as Plaintiff, suggesting that the assignment of the tasks to Plaintiff was unrelated to race;
>
> iv. Chase stated that "Shillingford ... made both the decision to hire Plaintiff and the decision to fire her," which Plaintiff claims is false because, among other reasons, "Shillingford was not even invited to any of the meetings where ... Chase's HR legal representatives were pre-planning and discussing [Plaintiff's] termination"; and
>
> v. Shillingford and Horowitz testified falsely that "other analysts and associates did have to ask for and obtain permission before working from home," which false testimony made Plaintiff out to be a liar.

(*Id.* at ¶¶ 22-28 (internal quotation marks and citations omitted)). These allegedly false and defamatory statements — and other similar allegations contained in the Amended Complaint — form the basis of the multiple causes of action that Plaintiff raises in this suit.

4

B.     **Procedural Background**

Plaintiff initiated this suit on October 23, 2019, eight days after the Supreme Court denied *certiorari* in *Lue I*. (Dkt. #1). *See also* 140 S. Ct. 388 (2019). On October 30, 2019, Plaintiff filed an Amended Complaint, which is the operative pleading in this action. (Dkt. #4).[2] In response to Plaintiff's Amended Complaint, by letter dated November 14, 2019, Defendants requested a pre-motion conference seeking to pursue a motion to dismiss. (Dkt. #8). The Court granted Defendants' request and scheduled a conference to address Defendants' anticipated motion. (Dkt. #16). Plaintiff filed a document in advance of the pre-motion conference, which document was styled as a brief and docketed on February 7, 2020. (*See* Dkt. #22). On February 18, 2020, the day of the pre-motion conference and nearly four months after filing the Amended Complaint, Plaintiff filed a document that she styled as exhibits to the Amended Complaint. (the "Complaint Exhibits" (Dkt. #24)).

On the record on February 18, 2020, the Court discussed with Plaintiff her understanding of the factual predicates for her case and the legal bases for her claims against Defendants. (*See generally* Hr'g Tr.). The Court set a briefing schedule for Defendants' anticipated motion to dismiss (*id.* at 17:14-18:5), and accepted Plaintiff's pre-conference letter brief as a supplementary filing in opposition to the anticipated motion to dismiss (*id.* at 16:5-14). The

---

[2]     On December 4, 2019, a second amended complaint was mistakenly docketed in this case, which document was later deleted. By letter dated December 10, 2019, Plaintiff confirmed to the Court that she did not intend to file a second amended complaint, and that the Amended Complaint remained the operative pleading in this case. (Dkt. #20).

5

Court deferred ruling on whether it would consider the Complaint Exhibits in resolving the instant motion, but explained that its "practice tends to be, in *pro se* cases, to consider as much information as [it is] given, so that would likely be the [Amended Complaint], the briefing, and these exhibits [*i.e.*, the Complaint Exhibits] as well." (*Id.* at 17:2-9). At the conference, the Court also stayed discovery pending resolution of the instant motion. (*Id.* at 19:10-11).

Thereafter, Defendants filed their motion to dismiss and supporting papers on March 20, 2020 (Dkt. #28-29); Plaintiff filed her opposition papers on April 23, 2020 (Dkt. #30-31); and Defendants filed their reply papers on May 15, 2020 (Dkt. #32). Defendants filed a notice of supplemental authority on December 2, 2020 (Dkt. #33-34), to which Plaintiff filed a response on December 9, 2020 (Dkt. #35).

## DISCUSSION

**A.     Applicable Law**

Under Rule 12(b)(6), a defendant is permitted to move that the plaintiff's action be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), a court must "draw all reasonable inferences in Plaintiff's favor, 'assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief.'" *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quoting *Selevan* v. *N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff is entitled to relief if she alleges "enough facts to state a claim to

relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiff's] claims across the line from conceivable to plausible.'" (quoting *Twombly*, 550 U.S. at 570)).

A court adjudicating a motion to dismiss under Rule 12(b)(6) "may review only a narrow universe of materials." *Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). This narrow universe includes "facts stated on the face of the complaint, ... documents appended to the complaint or incorporated in the complaint by reference, and ... matters of which judicial notice may be taken," as well as documents that can properly be considered "integral" to the complaint. *Id.* Here, the Court the Court takes judicial notice of the filings in *Lue I*. *See Int'l Star Class Yacht Racing Ass'n* v. *Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998) (explaining that court "may take judicial notice of a document filed in another court").[3]

"[C]ourts must construe *pro se* pleadings broadly, and interpret them 'to raise the strongest arguments that they suggest.'" *Cruz* v. *Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (quoting *Graham* v. *Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)); *cf.* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). "However inartfully pleaded, a *pro se* complaint may not be dismissed under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff

---

[3] Additionally, although the Court has considered the Complaint Exhibits in resolving the pending motion to dismiss, it notes that — after a careful review — the Court has determined that they are not relevant to any the issues raised by the instant motion.

can prove no set of facts in support of her claim which would entitle her to relief." *Legeno* v. *Corcoran Grp.*, 308 F. App'x 495, 496 (2d Cir. 2009) (summary order) (internal quotation marks and alterations omitted) (quoting *Posr* v. *Ct. Officer Shield No. 207*, 180 F.3d 409, 413 (2d Cir. 1999)).  With that said, to survive a Rule 12(b)(6) motion to dismiss, a *pro se* plaintiff's factual allegations must at least "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Indeed, the court is not bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon* v. *Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (internal quotation marks omitted) (quoting *Smith* v. *Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)); *see also Harris* v. *Mills*, 572 F.3d 66, 72 (2d Cir. 2009).  Moreover, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

**B.   Analysis**[4]

Plaintiff raises seven causes of action in the First Amended Complaint: (i) defamation; (ii) common law conspiracy; (iii) false and fraudulent acts and

---

[4]   Because subject matter jurisdiction in this case is based upon diversity of citizenship (*see* Am. Compl. ¶ 1), the Court applies the choice of law rules of the forum state, *see Klaxon Co.* v. *Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  New York choice of law rules mandate application of the substantive law of the state with the most significant relationship to the legal issue.  *See, e.g., Skaff* v. *Progress Int'l, LLC*, No. 12 Civ. 9045 (KPF), 2014 WL 5454825, at *8 (S.D.N.Y. Oct. 28, 2014) (quoting *Intercontinental Plan., Ltd.* v. *Daystrom, Inc.*, 24 N.Y.2d 372, 382 (1969)).  Defendants' briefing indicates their belief that New York law applies in this case.  (*See* Def. Br. 4).  The Court agrees.  The instant suit alleges defamation with respect to prior litigation in federal court in New York between the same parties — many of which are located in New York — and as

8

conduct; (iv) actual malice; (v) libel; (vi) defamation *per se*; and (vii) defamation by implication.  (*See generally* Am. Compl.).  Claims one, three, four, five, six, and seven are all various forms of defamation, and the Court addresses them together as such.[5]  Defendants argue that Plaintiff's claims are barred by New York's absolute privilege for statements made in the course of judicial proceedings, and that in any event, Plaintiff fails to state a claim for relief.  The Court agrees with Defendants on both counts and therefore dismisses the Amended Complaint in its entirety.[6]

1. **Plaintiff's Claims Are Barred by Privilege**

New York recognizes an absolute privilege for oral or written communications made in the course of judicial proceedings.  *Kelly* v. *Albarino*, 485 F.3d 664, 665 (2d Cir. 2007) (per curiam) (citing *Hemmens* v. *Nelson*, 138 N.Y. 517, 523 (1893)).  "The absolute privilege applicable to the statements of

---

such, the complained-of conduct and harm occurred in New York.  Accordingly, the Court will apply New York law to Plaintiff's state law claims.

[5]   Plaintiff pleads a claim for "false and fraudulent acts and conduct."  (*See* Am. Compl. ¶¶ 34-37).  However, a closer inspection of Plaintiff's allegations with respect to this claim demonstrates that Plaintiff is alleging a reputational injury caused by purportedly false and defamatory statements made in the *Lue I* litigation.  Accordingly, the Court construes this cause of action to sound in defamation.  To the extent Plaintiff asserts a claim for perjury, premised on the allegation that Defendants perjured themselves in *Lue I*, the Court notes that there is generally no private cause of action for perjury under New York law.  *See, e.g.*, *Newin Corp.* v. *Hartford Accident & Indem. Co.*, 37 N.Y.2d 211, 217 (1975).

[6]   Plaintiff alleges that Defendants' conduct "constitute[s] a conspiracy at common law." (*See* Am. Compl. ¶¶ 30-33).  Under New York law, "[t]o state a claim for civil conspiracy, 'the plaintiff must allege a [i] cognizable tort, coupled with [ii] an agreement between the conspirators regarding the tort, and [iii] an overt action in furtherance of the agreement.'" *ExpertConnect, LLC* v. *Fowler*, No. 18 Civ. 4828 (LGS), 2019 WL 3004161, at *8 (S.D.N.Y. July 10, 2019) (quoting *Faulkner* v. *Yonkers*, 963 N.Y.S. 2d 340, 341 (2d Dep't 2013)).  Because Plaintiff has failed to state a claim for defamation or any other tort — as discussed below — Plaintiff fails to establish the first element of a civil conspiracy claim and thus her conspiracy claim must be dismissed.

9

participants in judicial proceedings is not lost by the presence of actual malice." *Id.* (citing *Sheridan* v. *Crisona*, 14 N.Y.2d 108, 112 (1964)). This absolute privilege attaches to every step of a judicial proceeding, and to statements made by witnesses, as well as judges, parties, and attorneys. *See Weitz* v. *Wagner,* No. 07 Civ. 1106 (ERK) (ETB), 2008 WL 5605669, at *7 (E.D.N.Y. July 24, 2008).

The judicial proceedings privilege prohibits defamation claims arising out of statements made in litigation "'if, by any view or under any circumstances, it may be considered pertinent to the litigation.'" *Tagliaferri* v. *Szulik*, No. 15 Civ. 2685 (LGS), 2015 WL 5918204, at *3 (S.D.N.Y. Oct. 9, 2015) (quoting *Martirano* v. *Frost,* 25 N.Y.2d 505, 507 (1969)). "'The test of pertinency is extremely broad,' and the privilege 'embraces anything that may possibly or plausibly be relevant or pertinent, with the barest rationality, divorced from any palpable or pragmatic degree of probability.'" *Morgan Art Found. Ltd.* v. *McKenzie*, No. 18 Civ. 4438 (AT), 2019 WL 2725625, at *16 (S.D.N.Y. July 1, 2019) (quoting *O'Brien* v. *Alexander,* 898 F. Supp. 162, 171 (S.D.N.Y. 1995)); *see also Flomenhaft* v. *Finkelstein*, 8 N.Y.S.3d 161, 164-65 (1st Dep't 2015) ("[T]he test to determine whether a statement is pertinent to litigation is extremely liberal such that the offending statement, to be actionable, must have been outrageously out of context." (internal quotation marks and citations omitted)).

New York's judicial proceedings privilege seeks to protect the public interest in encouraging participants in litigation to "'speak with that free and open mind which the administration of justice demands.'" *D'Annunzio* v.

10

*Ayken, Inc.*, 876 F. Supp. 2d 211, 217 (E.D.N.Y. 2012) (quoting *Youmans* v. *Smith*, 153 N.Y. 214, 223 (1897)); *see also Martirano*, 25 N.Y.2d at 508-09. To allow statements made in judicial proceedings to be a basis for a defamation action "would be an impediment to justice, because it would hamper the search for truth, and prevent making inquiries with that freedom and boldness which the welfare of society requires." *Youmans*, 153 N.Y. at 220.

Each purportedly defamatory statement that Plaintiff cites in her Amended Complaint was made in the course of judicial proceedings before the Second Circuit. (*Compare, e.g.,* Am. Compl. ¶¶ 22-29, *with Lue* v. *JPMorgan Chase & Co.*, No. 18-1248, Dkt. #66 (2d Cir. Nov. 2, 2018)). Plaintiff not only admits that this material was contained in Defendants' filings before the Second Circuit, but argues that it is defamatory *because* it was "published" in the course of that judicial proceeding. (*See* Am. Compl. ¶ 20). Accordingly, the statements at issue here were material and pertinent to the judicial proceedings in *Lue I.* Indeed, they were critical to Defendants' defense to Plaintiff's suit in *Lue I.* Thus, the statements are absolutely privileged and cannot form the basis for a defamation claim.

In a last-ditch effort to avoid dismissal, Plaintiff argues that the privilege does not apply here — even though she concedes that the purportedly defamatory statements were made in a judicial proceeding — because Defendants' statements only indirectly, rather than explicitly, called her a "vindictive, lying, uncongenial and elitist person[,] and a less desirable/undesirable employee." (Pl. Br. 1-2). But this is a distinction

11

without a difference. The judicial proceedings privilege applies as long as the purportedly defamatory statements were "pertinent" to prior litigation, and thus it is immaterial whether the putative defamation is indirect or explicit.[7] Each purportedly actionable statement that Plaintiff cites in her Amended Complaint was central to the litigation in *Lue I* and accordingly Plaintiff's defamation claims are barred by New York's absolute privilege.

### 2. Plaintiff Fails to State a Claim for Defamation

Defendants argue that even if Plaintiff's claims are not barred by absolute privilege, Plaintiff still fails to state a claim for defamation under New York law. (*See* Def. Br. 5-8). The Court agrees, and dismisses Plaintiff's claims on this independent basis.

Plaintiff alleges claims for defamation, actual malice, libel, defamation *per se*, and defamation by implication. As noted above, these claims are various species of defamation.[8] "Defamation is the injury to one's reputation either by written expression, which is libel, or by oral expression, which is slander.'" *Lan Sang* v. *Ming Hai*, 951 F. Supp. 2d 504, 517 (S.D.N.Y. 2013)

---

[7]   Furthermore, as Defendants explain, to accept Plaintiff's indirect versus direct distinction — *i.e.*, that defamation occurs indirectly every time a party files something that their opponent disputes — would give rise to a defamation claim "each and every time a defendant filed an answer to a complaint that denied the plaintiff's allegations." (Def. Br. 6).

[8]   Plaintiff pleads a cause of action for "actual malice." (Am. Compl. ¶¶ 38-45). However, "actual malice" is not an independent cause of action, but rather is an element that a plaintiff must plead in a defamation action to overcome qualified privilege. *See Vilien* v. *Dep't of Educ. of City of N.Y.*, No. 06 Civ. 3491 (BSJ), 2009 WL 857458, at *7-8 (S.D.N.Y. Mar. 31, 2009). Because Plaintiff's claims are barred by absolute privilege, as explained above, the Court need not address whether Plaintiff has adequately pleaded malice. And in any event, because Plaintiff fails to adequately allege a defamation claim, as discussed below, her defamation claims are dismissed, regardless of whether Defendants acted with malice.

(quoting *Biro* v. *Conde Nast*, 883 F. Supp. 2d 441, 458 (S.D.N.Y. 2012)).  Under New York law, a plaintiff must show "(i) a defamatory statement of fact, (ii) that is false, (iii) published to a third party, (iv) of and concerning the plaintiff, (v) made with the applicable level of fault on the part of the speaker, (vi) either causing special harm or constituting slander *per se*, and (vii) not protected by privilege."  *Albert* v. *Loksen*, 239 F.3d 256, 265-66 (2d Cir. 2001) (internal quotation marks and footnote omitted) (citing *Dillon* v. *City of New York*, 704 N.Y.S.2d 1, 5 (1st Dep't 1999)).  Whether a statement is defamatory is a legal question that may be resolved by a court in the first instance.  *See Lan Sang*, 951 F. Supp. 2d at 517.  As noted above, the Court has already held that Plaintiff's defamation claims are barred by absolute privilege.  However, in the interest of completeness, the Court addresses the merits of Plaintiff's claims.  Although there is no real dispute that the statements at issue concerned Plaintiff and that they were published, Plaintiff's defamation claims must be dismissed because she fails to establish the first, second, fifth, and sixth elements of a defamation claim.

The first and second elements require Plaintiff to plead a false statement of fact.  In this regard, Plaintiff alleges that certain comments about her work performance from her 2013 mid-year review are defamatory.  (*See* Am. Compl. ¶ 23).  Plaintiff is unable to meet the first and second elements of a defamation claim as to these comments because "[u]nder New York law, the evaluation of an employee's performance, even an unsatisfactory evaluation, is a matter of opinion that cannot be objectively categorized as true or false and cannot be

13

actionable." *Brattis* v. *Rainbow Advert. Holdings, LLC*, No. 99 Civ. 10144 (NRB) 2000 WL 702921, at *4 (S.D.N.Y. May 31, 2000); *see also Chimarev* v. *TD Waterhouse Inv. Servs.*, 99 F. App'x 259, 263 (2d Cir. 2004) (summary order) (noting that "'an employer has the right … to assess an employee's performance on the job,' so that negative internal assessments cannot support a claim for defamation" (quoting *Williams* v. *Varig Brazilian Airlines*, 564 N.Y.S.2d 328, 331 (1st Dep't 1991))). Accordingly, Plaintiff cannot maintain a defamation claim arising out of her performance review. *Accord Brattis*, 2000 WL 702921, at *4.

Turning to the fifth element of a defamation claim, the level of fault a private plaintiff must show to allege defamation depends on whether the statement at issue "'is arguably within the sphere of legitimate public concern[.]'" *Albert*, 239 F.3d at 269 (quoting *Chapadeau* v. *Utica Observer-Dispatch, Inc.*, 38 N.Y.2d 196, 199 (1975)). Under New York law, whether a statement involves a "matter of legitimate public concern" has been given a "broad interpretation," *id.* at 269, but "publications directed only to a limited, private audience are 'matters of purely private concern[,]'" *Huggins* v. *Moore*, 94 N.Y.2d 296, 303 (1999) (quoting *Dun & Bradstreet* v. *Greenmoss Builders, Inc.*, 472 U.S. 749, 759 (1985)). When a private plaintiff sues for defamation in the course of discharge from private employment, courts have found that to be a matter of private concern. *See, e.g., Weldy* v. *Piedmont Airlines, Inc.*, 985 F.2d 57, 64 (2d Cir. 1993) (holding that the discharge of a non-public employee by a private airline is matter of private concern). Thus, as here, where the statement is a matter of private concern, the plaintiff must allege that the

14

defendant was at least negligent. *See Bouveng* v. *NYG Cap. LLC*, 175 F. Supp. 3d 280, 319 n.23 (S.D.N.Y. 2016). But there is no indication that Defendants were negligent in publishing or disseminating the purportedly defamatory statements here. On the contrary, Defendants made an effort to check the accuracy of the allegations, including by taking the testimony of four relevant parties and conducting thorough investigations into Plaintiff's allegations. *See Lue* v. *JPMorgan Chase & Co.*, No. 18-1248, Dkt. #66 (2d Cir. Nov. 2, 2018). Thus, Plaintiff fails to satisfy the fifth element of a claim for defamation across all of her claims.

The sixth element of a defamation claim requires Plaintiff to plead special damages or to establish defamation *per se*. *Albert*, 239 F.3d at 266. "Special harm" is the "loss of something having economic or pecuniary value." *Liberman* v. *Gelstein*, 80 N.Y.2d 429, 434-35 (1992). Among the bases for defamation *per se* is a statement that "tend[s] to injure the plaintiff in his or her trade, business[,] or profession[.]" *Albert*, 239 F.3d at 271.

To satisfy this element, special damages "must be fully and accurately identified 'with sufficient particularity to identify actual losses[.]'" *Matherson* v. *Marchello*, 473 N.Y.S.2d 998, 1000-01 (2d Dep't 1984) (quoting *Lincoln First Bank of Rochester* v. *Siegel*, 400 N.Y.S.2d 627, 633 (4th Dep't 1977)). Plaintiff does not explicitly allege special damages. (*See generally* Am. Compl.). However, construing Plaintiff's claims liberally, Plaintiff alleges that her "career prospects have been drastically reduced" as a consequence of Defendants' statements. (*See* Hr'g Tr. 14:25-15:7; *see also* Pl. Br. 8-9 ("If [Defendants']

defamatory … conduct … [is] not remedied, I will suffer damage for the rest of my life.")). But even under this liberal reading, Plaintiff fails to allege special damages with the requisite degree of specificity to sustain her defamation claim. She identifies neither an actual loss of income nor specific failures in obtaining prospective employment. *See, e.g.*, *Agnant* v. *Shakur*, 30 F. Supp. 2d 420, 426 (S.D.N.Y. 1998) (holding that allegation that "plaintiff has been unable to find employment commensurate with his training and experience, and has had his reputation destroyed in the community" is a "general allegation" that "does not satisfy the requirement [to] plead[] special damages"). Indeed, Plaintiff concedes that she has been able to secure employment following the purportedly defamatory statements made in *Lue I*. (Hr'g Tr. 14:21-15:24).

Having failed to allege special damages, Plaintiff also fails to allege defamation *per se*. To be sure, a statement "'which tends to disparage a person in the way of his office, profession[,] or trade'" is defamatory *per se*. *Davis* v. *Ross*, 754 F.2d 80, 82 (2d Cir. 1985) (quoting *Nichols* v. *Item Publishers*, 309 N.Y. 596, 600 (1956)). However, the attack must relate to a "matter of significance and importance" to the plaintiff's work. *Horne* v. *Matthews*, No. 97 Civ. 3605 (JSM), 1997 WL 598452, at *2 (S.D.N.Y. Sept. 25, 1997). Construing Plaintiff's pleadings liberally, the Court understands Plaintiff to point to two types of statements that harmed her professional reputation: (i) negative comments in her performance reviews, and (ii) comments about Plaintiff's job

duties and relationships with her coworkers. (*See* Am. Compl. ¶¶ 22-28). In point of fact, neither argument saves Plaintiff's defamation claim.

*First*, the comments in the performance reviews and about Plaintiff's relationships with her coworkers do not rise to the level of defamation because they do not "target[ ] the specific standards of performance relevant to the plaintiff's business and impute conduct that is 'of a kind incompatible with the proper conduct of the business, trade, profession, or office itself.'" *Pure Power Boot Camp, Inc.* v. *Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 550 (S.D.N.Y. 2011) (quoting *Liberman*, 80 N.Y.2d at 436). At best, these statements may imply that Plaintiff's communication style did not meet Defendants' expectations. But this is insufficient because any statement evincing a "general dissatisfaction with job performance do[es] not qualify as defamation *per se*." *Accurate Grading Quality Assurance, Inc.* v. *Khothari*, No. 12 Civ. 9130 (LTS), 2014 WL 5073576, at *14 (S.D.N.Y. Sept. 30, 2014).

*Second*, Plaintiff alleges that Defendants defamed her professional reputation because their submissions contradict what she alleged in her complaint in *Lue I*, including the identities of her supervisor and hiring manager (Am. Compl. ¶¶ 22, 26-27); the tasks performed by other members of her team (*id.* at ¶¶ 24-25); and the lack of evidence of similarly situated employees who were treated more favorably (*id.* at ¶ 28). Defendants' statements do not, on their face, defame Plaintiff in her business or profession; they are simply factual disagreements that the parties briefed and argued in

17

*Lue I.* Accordingly, there is no claim for defamation, much less defamation *per se*, based on factual disagreements previously adjudicated.

Finally, Plaintiff pleads a cause of action for defamation by implication. (Am. Compl. ¶¶ 55-63). To state a claim for defamation by implication, a complaint must make an "'especially rigorous showing' that [i] the language may be reasonably read to impart the false innuendo, and [ii] the author intends or endorses the inference." *Biro*, 883 F. Supp. 2d at 466 (quoting *Chapin* v. *Knight-Ridder, Inc.*, 993 F.2d 1087, 1093 (4th Cir. 1993)). While Plaintiff points to evidence that she claims refutes the factual claims Defendants advanced in *Lue I* (*see* Am. Compl. ¶ 26), she fails to plausibly allege that Defendants intended to impart false innuendo or intention with respect to Plaintiff. Instead, it is clear that the references to Plaintiff, whether direct or implied, refer to the factual circumstances surrounding Plaintiff's termination, which circumstances Plaintiff herself does not claim are defamatory. *See, e.g.*, *Kavanagh* v. *Zwilling*, 578 F. App'x 24, 25 (2d Cir. 2014) (summary order) (affirming dismissal of a defamation by implication claim where the complaint failed to allege that the defendants intended or endorsed the defamatory inference). Accordingly, Plaintiff fails to establish a claim for defamation by implication.

In sum, Plaintiff has failed to state a plausible defamation claim. As such, Plaintiff's claims for defamation, actual malice, libel, defamation *per se*, and defamation by implication must be dismissed.

### 3. Leave to Amend Is Denied

"Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a court 'should freely give leave [to amend] when justice so requires.'" *Gorman* v. *Covidien Sales, LLC*, No. 13 Civ. 6486 (KPF), 2014 WL 7404071, at *2 (S.D.N.Y. Dec. 31, 2014) (quoting Fed. R. Civ. P. 15(a)(2)). Consistent with this liberal amendment policy, "'[t]he rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith.'" *Id.* (alteration in *Gorman*) (quoting *Block* v. *First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)). Nonetheless, "it remains 'proper to deny leave to replead where ... amendment would be futile.'" *Id.* (quoting *Hunt* v. *All. N. Am. Gov't Income Tr., Inc.*, 159 F.3d 723, 728 (2d Cir. 1998)).[9] Plaintiff's claims are barred by New York's absolute privilege, and thus amendment would be futile. *See Chimarev*, 99 F. App'x at 262-63 (affirming denial of motion to amend due to futility where claim was barred by absolute privilege). Accordingly, the Court finds that leave to amend would be futile and dismisses the Amended Complaint with prejudice.

---

[9] Similarly, the Court recognizes that while a *pro se* complaint "should not be dismissed without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," *Shomo* v. *City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (alterations and citation omitted), leave to replead need not be granted where — as here — it would be "futile," *Cuoco* v. *Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

19

## CONCLUSION

For the reasons set forth in this Opinion, Defendants' motion to dismiss is GRANTED with prejudice. The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case. The Clerk of Court is directed to mail a copy of this Opinion to Plaintiff.

SO ORDERED.

Dated:   March 23, 2021
         New York, New York

                                        KATHERINE POLK FAILLA
                                        United States District Judge